**KIMBROUGH BROTHERS LUMBER COMPANY et al., Appellants,**

**v.**

**Joe Walter LEADON, Appellee.**

**No. 551.**

Court of Civil Appeals of Texas, Tyler.

July 1, 1971.

Rehearing Denied July 29, 1971.

---

Joe Davis Foster, Center, for appellants.

Krist, McConnico & Jones, Kenneth D. McConnico, Houston, for appellee.

DUNAGAN, Chief Justice.

This suit was brought by Joe Walter Leadon against Kimbrough Brothers Lumber Company, a partnership composed of M. E. Kimbrough and Doyle Kimbrough, and each of the partners individually. The suit is for damages resulting from personal injuries allegedly suffered when the appellee (plaintiff in the court below), who was an employee of appellants (defendants in the court below), was struck by a falling limb and was thrown into the blade of a power saw he was operating. Appellee contended that a fellow servant or employee was hired to watch for and warn him of falling limbs. This was denied by appellants. It is undisputed that the appellants had elected not to become a subscriber under the workmen's compensation law of this state, and the suit was brought as a negligence action for damages against an employer who was a nonsubscriber. The case was tried to a jury, and upon a verdict on special issues the trial court rendered judgment for appellee. The appellants, being dissatisfied with the jury verdict and the judgment, have timely and properly perfected their appeal to this court.

Although 15 points of error are assigned, our decision will turn on the second point of error wherein appellants contend that appellee failed to establish negligence because appellee failed as a matter of law to establish that appellants had a duty to watch out for, and warn, appellee of falling limbs. We agree.

It seems to be appellee's contention that appellants had a duty to assign an employee to watch for and warn a fellow employee of falling limbs, or that appellants did so assign an employee with such duties. This was denied by appellants.

As grounds for a cause of action, appellee alleges in his petition " * * * that on the occasion in question, the relationship of 'master' and 'servant', or 'employer' and 'employee' existed between plaintiff (appellee) and defendants (appellants) with plaintiff as a 'servant' or 'employee', and the defendants as 'master' or 'employer'. Plaintiff alleges that on the occasion in question, the servants, agents and employees of the defendants acted in a negligent manner which act or acts of negligence proximately caused the plaintiff's injuries as herein alleged. These acts of negligence of the defendants, servants, agents and employees were committed while the servants, agents and employees were within the course and scope of their employment with the defendants. More particularly, the servants, agents and employees of the defendants were under a duty to watch for fallen limbs and warn plaintiff of same while plaintiff was in the process of sawing the fallen tree into sections. It was plaintiff's job to saw the tree down and then to saw the fallen tree into sections, and while the plaintiff was sawing said fallen trees into sections, the individual working with plaintiff was instructed to watch for any branches that may be loose or hanging in the branches of any standing trees or that might fall from above onto plaintiff and in addition to warn the plaintiff of any hanging or fallen branches so that plaintiff could escape the dangers and perils therein. The servants, agents and employees of the defendants were negligent in this regard and wholly failed to watch for fallen limbs, and wholly failed to warn the plaintiff of the fallen limbs, and consequently a branch fell from above and struck the plaintiff, causing the injuries as herein described. The plaintiff exercised that degree of care as a reasonably prudent man would have exercised under the same or similar circumstances. He was sawing the fallen tree into sections and had his head down and was not looking above, as the 'over head' work was that of the individual working with plaintiff. While he was in this position, the injury was sustained."

The record shows that on the occasion in question appellants were engaged in the sawmill business and had employed a crew of men to work in the forest cutting trees and sawing the same into logs to be used in the manufacture of lumber. Among these employees were Bill Huff, Terry Bussey and appellee, Joe Walter Leadon. The record shows that these men had worked together for several weeks. On the occasion in question appellee was engaged in sawing a log from one of the trees which had been felled and was laying on the ground. In performing this work he was using a power saw. While sawing the tree, he was struck by a falling limb which caused him to fall forward into the saw resulting in the injuries complained of.

Appellee, Leadon, testified that at some unspecified time prior to his injuries, he had heard Bill Huff, an employee of appellants, instruct Terry Bussey, another employee, to watch out for falling limbs. Bussey confirmed this, but testified that on the occasion in question he was looking elsewhere and did not see the limb until it struck appellee.

Bill Huff did not testify upon the trial of this case; however, Doyle Kimbrough testified, without contradiction, that Huff had no authority to direct employees as to their duties or to hire or fire; that Huff was not woods foreman and was not employed in any supervisory capacity. The appel-

lants also offered evidence from witnesses who had been in the lumber industry for many years that it was not the custom or practice in the timber industry to hire someone to watch for falling limbs. Kimbrough testified that they do not hire watchmen. This evidence as to custom is likewise undisputed.

Insofar as the record shows, the operations conducted by the appellants in cutting the trees and sawing the same into logs were accomplished in the usual and customary manner, and there existed no particular danger in the manner in which the business was conducted, other than those dangers which were ordinarily inherent in this type of employment. There is no evidence that either the appellee or any other employee of appellants had ever been injured on a previous occasion by a falling limb. Appellee has spent the most of his life working in the timber business in the same type of work he was doing when he was injured. He began such work at the age of 9, and he was 38 years of age at the time this case was tried.

Subdivision 4 of Section 1 of Article 8306, Vernon's Ann.Civ.St., reads as follows:

"In all such actions against an employer who is not a subscriber, as defined hereafter in this law, it shall be necessary to a recovery for the plaintiff to prove *negligence* of such employer * * *." (Emphasis supplied).

■ It is settled in this State that a plaintiff must prove the existence and violation of a legal duty owed to him by the defendant in order to establish tort liability. Coleman v. Hudson Gas and Oil Corporation, 455 S.W.2d 701 (Tex., 1970). "Negligence is a failure to observe a legal duty. Moreover, to constitute negligence at all, there must be a violation of a duty owed to the very person claiming on the ground of negligence. * * *" 40 Tex.Jur.2d, p. 448, sec. 6.

■ As in all actions at common law for personal injuries, appellee assumed the burden of pleading and proving a duty owed him by appellants, a breach of that duty, and that such breach was a proximate cause of his injuries. Appellant was not an insurer in these respects, but its duty was measured by the exercise of ordinary care. Taylor v. White, 212 S.W. 656 (Tex.Com. of App.). In the foregoing case, the Court said:

"* * * The measure of care required of the master is that degree of care which an ordinarily prudent person engaged in the same kind of business would have exercised under like or similar circumstances. The best evidence of the degree of care which an ordinarily prudent person would have exercised under given circumstances is the degree of care which ordinarily prudent persons engaged in the same kind of business customarily have exercised and commonly do exercise under like circumstances."

■ The evidence without controversy shows that none of the employers engaged in similar business customarily warned its employees of falling limbs. While the custom of others engaged in like business is not the absolute test of negligence, where the undisputed evidence shows affirmatively, as it does in this case, that the appellants were conducting their business in accordance with the uniform custom of persons engaged in like business, it devolves upon the plaintiff, before he can recover, to produce evidence showing that such custom is negligent. In the absence of such testimony, the legal presumption is that those engaged in like business were reasonably prudent in the conduct of their business and that they discharged their legal obligations for the safety of their servants. Taylor v. White, supra; Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863 (1961).

■ It is our considered opinion that appellants did not have a legal duty to hire someone to watch for falling limbs and warn a fellow servant of impending danger

because such danger was inherent in the employment. To hold otherwise would require the master to furnish one or more servants for each tree cutter to watch for and warn such cutter of the danger of the falling of limbs. It could equally as well be said that appellant was · required to hire someone to watch out for the watchman and warn him of inherent danger while in the scope of his employment. The evidence is undisputed that it has never been the custom or practice in the timber industry to hire watchmen to warn other servants or employees of impending danger while within the scope of their employment. For a discussion of this question see Drake v. Boston Safe Deposit & Trust Co., 307 Mass. 399, 30 N.E.2d 226 (1940); Janow v. Lewis, 194 Okl. 415, 172 P.2d 315 (1946); Grier v. Winyah Lumber Co., 144 S.C. 10, 141 S.E. 685 (1928).

In West Lumber Co. v. Smith, 292 S.W. 1103 (Tex.Com. of App., 1927), the court with approval from Colorado Milling & Elevator Company v. Bright, 76 Colo. 338, 231 P. 1111 quoted:

"'Since the Act of 1915 (Laws 1915, p. 515), and the Workmen's Compensation Act * * * the doctrine of assumption of any risk created by the master's negligence has disappeared, but the question of whether the employer was negligent remains, and the workman still assumes, so far as a suit for damages is concerned, the risks not created by the master's negligence.'"

The Supreme Court in the West case also said:

"We think counsel, in their application, aptly state the correct theory in this matter as follows:

'Accurately speaking, it is not correct to say that defendant in error is not entitled to recover because of assumption of risk. It is more proper to say that plaintiff in error is not liable on the theory of non-negligence, the injuries being due to risks and dangers which are not due to acts of the employer. The employer is relieved from liability because of lack of negligence on his part, and not because the employee assumes the risk, although he unquestionably does so as incident to his contract.'

"Any other construction of this statute would repeal the same. It is undoubtedly true that the Legislature has penalized employers who are eligible to come under the Compensation Law but who refused to do so. But our lawmakers have never authorized a recovery against a nonsubscriber in the absence of negligence on the part of such employer. All of these sections of this article should be so construed, if possible, as to give effect to each.

"In a word, an employer is not permitted to excuse his own negligence on the ground that the employee knew thereof and by continuing in such employment assumed the risk of such negligence. But it is still true that no recovery can be had from a nonsubscriber where no negligence on his part is shown, but where the injury is due to risks inherent in a given employment. It is clear to us that this is the proper construction of the act."

In Rio Bravo Oil Co. v. Matthews, 20 S.W.2d 342 (Tex.Civ.App., Beaumont, 1929, n. w. h.), the court stated:

"* * * He says appellant was a nonsubscriber under the Workmen's Compensation Act, and for that reason its liability is not measured by common-law principles. In this he is in error. That appellant was a nonsubscriber, under the Workmen's Compensation Act, was an immaterial issue on the affirmative allegations of his petition. The Workmen's Compensation Act added nothing whatever to his affirmative rights, nor did it relieve him of the duty of pleading and proving all the common-law essentials of the cause of action asserted. As between a servant and his nonsubscribing master, the only effect of the Workmen's Compensation Act is to abolish the defenses

(a) of contributory negligence; (b) that the injury was caused by the negligence of a fellow servant; and (c) of assumed risk. Article 8306, § 1, Revised Statutes 1925. As in all actions at common law for personal injuries, appellee rested under the duty of pleading a duty owed him by appellant, a breach of that duty, and that such breach was the proximate cause of his injuries."

The facts of this case clearly brings it within the rules of law as above enunciated.

As evidence that each worker sawing timber kept their own lookout, is the undisputed evidence of Doyle Kimbrough and two expert witnesses who had been engaged in the timber business for a number of years, that it was not the custom or practice in the timber industry to hire a man to go to the woods with people sawing down trees and watch for falling limbs for the protection of the cutter. We find no evidence in this record that any such watchman was ever hired to watch over the other tree cutters in the employment of the appellants or anyone else in the timber industry.

We have concluded that under the facts of this case appellants are not liable, the injuries being due to risks and dangers which are not due to acts of the master or employer. Appellants are relieved from liability because of lack of negligence on their part, and not because the employee or servant assumes the risks, although he unquestionably did so as incident to his contract. West Lumber Company v. Smith, supra; Rio Bravo Oil Company v. Matthews, supra; Doherty v. Paul's for Tires, Inc., 314 Mass. 83, 49 N.E.2d 430 (1943).

 The fact that appellants' employee or servant Huff, apparently an experienced worker in the timber industry, informed fellow employee Bussey to watch for falling limbs affords no basis for appellants' liability because the evidence shows conclusively that Huff had no authority to give such instructions. Consequently, the evidence fails to show appellants assumed such duty.

"Where there is a special agreement by the master to warn the servant, the non-performance of which is the occasion of injury to the latter, the master will be liable." 56 C.J.S. Master and Servant § 288, p. 1051. In the case at bar there is neither pleadings nor proof that such an agreement between appellants and appellee was ever entered into and appellee does not so contend on this appeal.

We believe the factual situation of the case at bar distinguishes it from the case of Sears, Roebuck & Company v. Robinson, 154 Tex. 336, 280 S.W.2d 238 (1955), cited in appellee's brief. The Robinson case did not involve an injury caused by a risk which within its very nature was incident to the duties which the servant had contracted to perform or inherent in the work the employee or servant was employed to perform.

In view of the disposition we are making of this case, we do not think it necessary to discuss the other points of error raised by appellants.

For the foregoing reasons the judgment of the trial court is reversed and rendered.