**COUNTY OF EL PASO, Appellant,**

v.

**EL PASO COUNTY SHERIFFS' DEPU-
TIES ASSOCIATION, INC., Appellee.**

No. 08–83–00327–CV.

Court of Appeals of Texas,
El Paso.

June 27, 1984.

Ralph William Scoggins, El Paso, for appellant.

William J. Ellis, El Paso, Bruce A. Pauley, Austin, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

OPINION

OSBORN, Justice.

This is an appeal by the County of El Paso from a denial of relief sought by declaratory judgment in the trial court. On April 3, 1982, the electorate of El Paso County adopted Tex.Rev.Civ.Stat.Ann. art. 5154c–1 (Vernon Supp.1984), the Fire and Police Employee Relations Act, for application to full-time law enforcement personnel within the sheriff's department. See: *Commissioners' Court of El Paso County v. El Paso County Sheriff's Deputies Association,* 620 S.W.2d 900 (Tex.Civ.App.— El Paso 1981, writ ref'd n.r.e.). The Appellee became the designated bargaining agent on behalf of the sheriff's deputies.

On June 7, 1983, the Appellee served written notice upon the county commissioners of its desire to engage in collective bargaining over wages, rate of pay and other matters for the 1983–1984 county fiscal year. That year was to commence October 1, 1983. The notice was given 115 days before the close of the 1982–1983 fiscal year. The county initially entered collective bargaining, but the negotiations were abated when it was discovered that the employees' agent had not complied with the notice time requirement of Section 7(d) of the act. Appellant filed a declaratory judgment petition in district court contending that the time requirement was mandatory and noncompliance relieved the county of any need to engage in collective bargaining. The evidence consisted of a single-page stipulation of the above recited facts. Contrary to an assertion in Appellee's brief, there was no pleading, proof or finding that the county received actual, non-written notice at least 120 days before the close of the fiscal year. The trial court found that the Appellee's written 115-day notice was in substantial compliance with the act.

The only question presented is whether strict compliance with the 120-day notice provision is mandatory. Appellant relies

primarily upon the plain language of Subsection 7(d) ("shall" and "obligation"). Appellee relies upon Subsection 2(b)(3) which mandates a liberal construction of the statute's provisions and upon analogy to numerous cases excusing notice time requirements under the Texas Tort Claims Act, Tex.Rev.Civ.Stat.Ann. art. 6252–19, sec. 16 (Vernon Supp.1984). The relief provided claimants by those latter cases invariably falls within one of three categories: (1) estoppel against the defendant due to misleading conduct which lulled the complainant into noncompliance—*Roberts v. Haltom City,* 543 S.W.2d 75 (Tex.1976); (2) excuse due to the claimant's mental or physical incapacity or minority—*City of Houston v. Torres,* 621 S.W.2d 588 (Tex. 1981); *City of Denton v. Mathes,* 528 S.W.2d 625 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n.r.e.); (3) formal defects in the manner of notice—*Artco-Bell Corporation v. City of Temple,* 616 S.W.2d 190 (Tex.1981); *City of Houston v. Wormley,* 623 S.W.2d 692 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.).

In this case, we are not confronted with estoppel, waiver or incapacity. On the other hand, the Supreme Court's decision as to the tort claim verification requirements in *Artco-Bell* was founded upon an evaluation of the purpose of the Tort Claims Act, the purpose of the notice requirements and the effects of the specific notice requirement in achieving or frustrating the statutory purpose. The same method of analysis is appropriate here.

The obvious purpose of advance notice of a desire for collective bargaining as to wages is to provide an opportunity to resolve the bargain prior to implementation of the next year's budget and tax rate. Why 120 days? Sections 9 through 12 of the act establish the format for extrajudicial resolution of the collective bargaining, including impasse procedures and resort to arbitration. Assuming a smooth progression through arbitration, without agreed extensions by the parties, dispute over the third neutral arbitrator or hearing extension by the arbitration board, the aggregate time allowed for all steps in the process totals 120 days.

What are the possible consequences of following the statutory procedure despite less than 120 days notice prior to the close of the current fiscal year? If agreement may be actually reached with or without arbitration within the time remaining in the current fiscal year, then no harm will flow to the taxpayers or the county administrative process. If agreement cannot be reached prior to close of the fiscal year, then the act provides that the issue does not become moot but any resulting award is also not to be retroactively effective. It would take effect with the commencement of the next fiscal year following the award decision. This provision is the most likely result even when the minimum 120-day notice is complied with. The same effect is achieved if notice is tardy. Where notice is late, the public employer may forestall the effective date of the award by simple invocation of the basic time allowances in Sections 9 through 12.

In summary, the continuation of collective bargaining upon a tardy notice cannot harm the county administration or taxpayers; the only detriment possible works against the deputies' association by delaying implementation of the resulting bargain. Consequently, the trial court was correct in finding that the time requirement was not subject to a strict compliance standard and that the instant notice substantially complied with the act. Under these circumstances, the earliest time at which an agreement between the parties may become effective is October 1, 1984. Point of Error No. One is overruled.

The judgment is affirmed.